Anthony M. Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Theresa M. Trillo (Bar No. 349989)
Email: tt@atalawgroup.com
Aqua Terra Aeris Law Group
8 Rio Vista Ave
Oakland, CA 94611
(917) 371-8293

Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E. 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>       Plaintiff,<br><br>   v.<br><br>VGP HOLDINGS LLC, a Delaware Limited Liability Company,<br><br>       Defendant. | Case No. 2:25-cv-06130-AGR<br><br>**[~~PROPOSED~~] CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant VGP Holdings LLC ("Defendant") owns and operates a facility at 9520 John Street, Santa Fe Springs, CA 90670, under Waste Discharger Identification number 4 19I030135 with a previous Waste Discharger Identification Number of 4 19I007332 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of blending, packaging, and distributing motor oil. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2992, covering Lubricating Oils and Greases;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 issued by the State Water Resources Control Board, Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in potential discharges of pollutants through stormwater into waters of the United States that are

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

[PROPOSED] CONSENT DECREE

regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges as necessary to comply with applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including a Monitoring Implementation Plan ("MIP"), designed to assess compliance with the Permit;

**WHEREAS**, on December 30, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on June 3, 2025, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25-cv-06130-AGR ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the North Fork of Coyote Creek, Coyote Creek, the San

1  Gabriel River, the San Gabriel River Estuary, San Pedro Bay, and the Pacific Ocean
2  (collectively, "Receiving Waters");

3       **WHEREAS**, Defendant denies the allegations contained in Plaintiff's
4  Complaint and contends that it has taken appropriate measures to reduce or prevent
5  discharges of pollutants in compliance with the General Permit and the Clean Water
6  Act;

7       **WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or
8  "Parties") agree that it is in their mutual interest to enter into a Consent Decree
9  setting forth terms and conditions appropriate to resolving the allegations set forth in
10 the 60-Day Notice Letter and Complaint without further proceedings;

11      **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
12 shall be made in compliance with all applicable federal, state and local laws, rules
13 and regulations.

14      **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
15 **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
16 **FOLLOWS:**

17      1.      The Court has jurisdiction over the subject matter of this action pursuant
18 to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

19      2.      Venue is appropriate in the Central District Court pursuant to Section
20 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the
21 alleged violations are taking place is located within this District.

22      3.      The Defendant denies the allegations of the Complaint but for purposes
23 of this Consent Decree does not contest whether the Complaint states a claim upon
24 which relief may be granted against Defendant pursuant to Section 505 of the CWA,
25 33 U.S.C. § 1365.

26      4.      LA Waterkeeper has standing to bring this action.

27

28

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term.

## I.   OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND DEFINITIONS

### A.   AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised

by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

      a.    "BAT" means the Best Available Technology Economically Achievable.

      b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

      c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

      d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

      e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Forecasted Rain Event" means a forecasted rain event with a thirty percent (30%) or greater probability of precipitation above 0.1 inches for the following 24-hour period at least twenty-four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Santa Fe Springs, CA, USA (Los Angeles County) "[2].

j.    "MIP" means a Monitoring Implementation Plan.

k.    "PPT" means Pollution Prevention Team.

l.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.    "SWPPP" means a Storm Water Pollution Prevention Plan.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9472&lon=-118.0853

[PROPOSED] CONSENT DECREE

q.      "Term" means the period between the Effective Date and the "Termination Date."

r.      "Termination Date" means the latest of:

  i.      June 30 following three (3) years from the Effective Date;

  ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

  iii.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree;

s.      "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the Clean Water Act and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the values set forth in Table 1, below, consistent with the General Permit.

14.   <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.   <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

    a.   Install adequate biochar filtration wattles to absorb zinc leachate from the railcar containment area storm water discharge;

    b.   Implement a sweeping program using (1) the on-site floor sweeper[3] (beginning within ten (10) days of delivery of the newly purchased sweeper) to sweep the outside areas and plant and truck dock platforms at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access; and (2) contract with a third-party regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all outdoor paved areas at least once per month during the Wet Season ;[4]

---

[3] Tennent M20 Integrated Sweeper Scrubber
[4] All sweeping described herein shall occur during regular hours of operations.

[PROPOSED] CONSENT DECREE

c.    Install biochar-based treatment measures. Prior to the Wet Season employ and secure new biochar wattles in surface discharge areas to remove sediments and metals in storm water discharged from the Facility. Replace the existing absorbent socks near the standpipe, which drains towards Discharge Point 001, with biochar wattles configured around each drop inlet at the Facility to reduce metal concentrations. Defendant shall thereafter employ and secure biochar wattles in the same manner annually prior to the start of the Wet Season, no later than September 15th; [5]

d.    During each Wet Season, as necessary, replace the wattles when degraded by rips, tears or other visual damage, and/or sampling data demonstrating the wattles are not sufficiently reducing pollutant concentrations;

e.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles deployed at the Facility;

f.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

g.    Remove, and prevent the storage of all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap

---

[5] Biochar wattles employed in surface drainage areas and around drop inlets may be removed between Forecasted Rain Events. All biochar wattles may be removed outside of the Wet Season.

[~~PROPOSED~~] CONSENT DECREE

materials from outside areas of the property exposed to
precipitation;

h.   Annually, prior to the Wet Season, Defendant shall clean out the
storm water collection sumps at the Facility;

i.   Institute an equipment and vehicle maintenance program that
ensures:

    i.   no maintenance activities occur outdoors during wet
weather, unless such maintenance is required for safe
operation of the Facility, *e.g.*, the forklift breaks down in a
location that prevents ingress/egress;

    ii.  maintenance activities occur only in designated work areas
or beneath covered maintenance areas; and

    iii. when maintenance activities must be performed outdoors,
action shall be taken to immediately contain, capture, and
clean up any discharge or spills of waste fluids to the
ground; and

j.   Defendant shall also implement and maintain all recently
implemented BMPs listed in its 2025 revised SWPPP.

k.   Within seven (7) days of each of the above BMPs being
implemented for the first time or at the beginning of each Wet
Season during the Term, Defendant shall confirm to LA
Waterkeeper in writing, with representative photographs if
feasible, that such BMP has been implemented as set forth above.

**B.   SAMPLING AT THE FACILITY**

16.   Defendant shall continue to implement its monitoring program and
update it as necessary consistent with the General Permit. During the Term,
Defendant shall collect samples of storm water discharge from each Discharge Point

at the Facility from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year that occur during operating hours. Such sampling shall take place as soon as possible, consistent with hours of operation, within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during operating hours during a rain event pursuant to this Consent Decree, had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce sufficient discharge to collect a sample, then Defendant shall document the inability to sample by taking representative photographs during or promptly following the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the quarter, listing dates of such rain event(s), within five (5) days of a written request for such records by LA Waterkeeper.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit for any reason, including as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall within a reasonable time not to exceed thirty (30) days notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

[PROPOSED] CONSENT DECREE

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility for compliance purposes to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[6]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| pH | 6.0-9.0SU (instantaneous) | Basin Plan |
| Zinc (Zn) | 0.158  mg/L | NEL |

---

[6] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

22.    <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from the Facility within a Reporting Year exceeds the applicable annual value in Table 1; or where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds the applicable instantaneous value in Table 1.

23.    <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12; or (b) Defendant receives a laboratory report for storm water samples that demonstrates an Exceedance as defined above  ("Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger Event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.

a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs proposed to be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later

implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b. <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i. <u>Hydrologic Controls</u>. Installation of additional berms or equivalent operational controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii. <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii. <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, including potential modifications to sump management practices or additional impoundment capacity and/or filtration before discharge, to provide more effective filtration treatment of storm water prior to discharge.

iv. Remove and replace galvanized metal surfaces and grating in the railcar containment area with non-galvanized or coated alternatives to minimize leaching;

v. <u>Evaluation of Existing BMPs</u>. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs. Evaluate the feasibility of additional structural or operational BMPs, including trench drain retrofits or infiltration-based controls.

c. <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or explain in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28 below.

**D. VISUAL OBSERVATIONS**

24. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's

[PROPOSED] CONSENT DECREE

1  operating hours during every Forecasted Rain Event. Such inspections shall comply

2  with all requirements of Section XI.A.2 of the General Permit.

3      25.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained

4  staff of Defendant shall conduct monthly visual observations of the Facility including

5  outfalls, Discharge Points(s), outdoor industrial equipment and storage areas, outdoor

6  industrial activities areas, BMPs, and other identified potential sources of industrial

7  pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of

8  the General Permit. All Discharge Points shall also be inspected for accumulation of

9  dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and

10  other materials associated with operations at the Facility. During the Wet Season,

11  such inspections shall further include observations of all storm water BMPs that are

12  used only during the Wet Season at the Facility to ensure that operational BMPs are

13  being implemented, structural BMPs are in good condition or working order, and that

14  BMPs have been effective in producing clean conditions at the Facility. Such

15  inspections shall further include observation as to whether there are any non-storm

16  water discharges from the Facility.

17      26.    <u>Visual Observations Records</u>. Defendant shall maintain observation

18  records, including representative photographs, to document compliance with

19  Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons

20  who completed the inspection, the date of the inspection, and notes sufficient to

21  describe the completed activity and all observations thereof, including but not limited

22  to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair,

23  replacement, or operation and maintenance is needed for any BMPs; (iii) other

24  conditions that have the potential to lead to pollutant loading in storm water

25  discharges; and (iv) representative photographs of all the foregoing if applicable.

26  Defendant shall provide LA Waterkeeper with a copy of those records within seven

27  (7) days of receipt of a written request from LA Waterkeeper for those records.

28

E.    **TRAINING AND PLANS**

27.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall update its employee training program to meet the following requirements and ensure (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the SWPPP and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a.    <u>Materials</u>. Training materials should include a Training Manual or Standard Operating Procedures, and the SWPPP, including drawings and diagrams where appropriate—each for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.    <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated annually to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.  Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.  Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

28.  SWPPP Revisions.

a.  Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The

1  complete, updated SWPPP shall contain, at a minimum, the
2  following elements:

3  b.  A revised pollutant source assessment, including all elements
4      required by Section X.G of the General Permit as well as
5      assessments of the potential for the Facility's storm water
6      discharges to contain pollutants for which the Receiving Waters
7      are 303(d) listed and/or have Total Maximum Daily Loads;

8  c.  A detailed narrative description and assessment of each industrial
9      activity with the potential to impact storm water quality occurring
10     at the Facility as required by Section X.G of the General Permit;

11 d.  Descriptions of all BMPs in accordance with Section X.H.4 of the
12     General Permit, including BMPs required by this Consent Decree;

13 e.  A set of site maps that comply with Section X.E of the General
14     Permit and provisions of this Consent Decree, including
15     accurately depicting the different drainage areas and flows;

16 f.  A MIP as required by Sections XI and X.I of the General Permit;

17 g.  A designation (by position/title) of employees responsible for
18     carrying out storm water management, monitoring, sampling and
19     SWPPP implementation, e.g., visual inspection of each specific
20     area, monitoring each specific BMP, sampling, etc.; and

21 h.  A Training Program as described above in Paragraph 27.

22 i.  Additional SWPPP Revisions.

23     i.  Within thirty (30) days after approval of any Action Plan by
24         LA Waterkeeper (or resolution pursuant to Dispute
25         Resolution), Defendant shall revise the then-current SWPPP
26         to reflect the changes required by the Action Plan and

27
28

1                 submit the complete, updated SWPPP to LA Waterkeeper

2                 for LA Waterkeeper's review and comment.

3        ii.     Within thirty (30) days after any changes in industrial

4                 activities or sources of industrial pollutants, changes to

5                 Discharge Points, or changes to sections of the SWPPP

6                 identified in the SWPPP as requiring a SWPPP revision

7                 including changes or additions of BMPs, or changes in or

8                 additions of industrial activities that impact storm water

9                 discharge (excluding administrative revisions such as

10                 changes in Facility contacts or PPT members, reported

11                 under General Permit Section X.B.3), Defendant shall

12                 revise the then-current SWPPP to reflect such changes and

13                 submit the complete, updated SWPPP to LA Waterkeeper

14                 for LA Waterkeeper's review and comment.

15     j.     <u>Review of SWPPP</u>.  For any substantive SWPPP updates pursuant

16          to Paragraph 28 (i.e., other than administrative changes reported

17          under General Permit Section X.B.3.), LA Waterkeeper shall have

18          twenty (20) days upon receipt of Defendant's complete SWPPP to

19          provide Defendant with comments. Within twenty (20) days of

20          receiving LA Waterkeeper's comments and proposed changes to

21          the SWPPP, Defendant shall consider each of the comments and

22          proposed changes and either accept them or explain in writing

23          why a change is not incorporated. The Settling Parties agree to

24          work in good faith to resolve any disputes with respect to the

25          SWPPP, and any remaining disputes will be resolved through

26          timely initiation of the dispute resolution procedures in Section IV

27          below. Following its incorporation of proposed modification or

28

1    additions (if any) into each revised SWPPP, Defendant shall

2    upload the revised SWPPP to SMARTS.

3    **F.    COMPLIANCE MONITORING AND REPORTING**

4    29.    LA Waterkeeper may conduct one annual site inspection ("Site

5    Inspection") during each Reporting Year during the Term for the purpose of ensuring

6    compliance with this Consent Decree and the General Permit. In the event of a

7    dispute regarding Defendant's compliance with this Consent Decree, and provided a

8    Site Inspection would be relevant to resolving the Settling Parties' dispute, the

9    Settling Parties agree to meet and confer regarding an additional Site Inspection at

10    Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not

11    unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur

12    during normal business hours, shall not interfere with operations, and shall be limited

13    to outside areas. LA Waterkeeper will provide Defendant with at least twenty-four

14    (24) hours' notice prior to any Site Inspection during wet weather and 48 hours'

15    notice prior to an inspection during dry weather, and when feasible LA Waterkeeper

16    will provide at least seven (7) day notice prior to any inspection during dry weather to

17    allow a mutual agreeable inspection date to be coordinated by the Settling Parties. For

18    any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to

19    adjust timing or reschedule during normal business hours in the event the forecast

20    changes and anticipated precipitation appears unlikely, and thus frustrates the purpose

21    of visiting the Facility in wet weather. Notice will be provided by electronic mail to

22    the individual(s) designated below at Paragraph 56. During the Wet Weather

23    inspection, Plaintiff may request that Defendant collect a sample of industrial storm

24    water discharge from the Facility's designated industrial discharge point(s)

25    referenced in its SWPPP, to the extent that such discharges are occurring. Defendant

26    shall collect the sample and provide a split sample to LA Waterkeeper. LA

27    Waterkeeper's representative(s) may observe the split sample(s) being collected by

28

Defendant's representative. LA Waterkeeper shall be permitted to take photographs during any Site Inspection.

30. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

      a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility, that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

      b.    Within three (3) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

31. <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Twenty Thousand Dollars ($20,000.00) within thirty (30) days of the Entry Date.  In the event that, pursuant to Paragraph 29, there is an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Three Thousand Dollars ($3,000.00) during such year, within thirty (30) days after any additional Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles

Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**G.  ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

32.  <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the San Gabriel River watershed and waters tributary to the San Gabriel River watershed, Defendant shall make a one-time payment totaling Fifty Thousand Dollars ($50,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.  <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Eighty-Two Thousand Dollars ($82,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 8 Rio Vista Ave., Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.  <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, if, after LA Waterkeeper provides notice, if Defendant fails to cure within ten (10) business days, Defendant shall pay a stipulated payment of Five

Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 34. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.   DISPUTE RESOLUTION

35.   <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

36.   <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 35, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

37.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

38.   <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

39. <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.  MISCELLANEOUS PROVISIONS

41. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

42. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

44.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

45.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

46.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

47.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48.     Choice of Law. The laws of the United States shall govern this Consent Decree.

49.     Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

50. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

51. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

52. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

53. <u>Publicity</u>. During the Term, LA Waterkeeper shall not post a copy of this Consent Decree on its website or in any LA Waterkeeper publication or promotional media.

54. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Laura I. Pentova |
| Benjamin Harris | Chief Legal Officer |
| Erina Kwon | Valvoline Global Operations |
| Madeleine Siegel | 100 Valvoline Way, Suite 200 |
| 360 E 2nd St., Suite 250 | Lexington, KY 40509 |
| Los Angeles, CA 90012 | Email: lipentova@valvolineglobal.com |
| Email: ben@lawaterkeeper.org | Phone: (859)357-7499 |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Anthony M. Barnes | Maya Mouawad |
| ATA Law Group | Carolyn L. McIntosh |
| 8 Rio Vista Ave. | Squire Patton Boggs (US) LLP |
| Oakland, CA 94611 | 555 South Flower Street, 31st Floor |
| Email: amb@atalawgroup.com | Los Angeles, California 90071Email: |
| Phone: 917-371-8293 | maya.mouawad@squirepb.com |
| | Email: carolyn.mcintosh@squirepb.com |

[PROPOSED] CONSENT DECREE

Phone: 213-689-5198

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____July 3_____, 2025

By: _____

Bruce Reznik
Executive Director
Los Angeles Waterkeeper

Dated: _____July 3_____, 2025

By: *Laura I Pentova*
Laura I Pentova (Jul 3, 2025 22:23 GMT+3)

Laura Pentova
Chief Legal Officer
VGP Holdings, LLC

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: _____July 3_____, 2025

By: _____

Anthony M. Barnes
Attorney for Plaintiff
Los Angeles Waterkeeper

SQUIRE PATTON BOGGS

Dated: _____July 3_____, 2025

By: _____

Maya Mouawad
Attorney For Defendant
VGP HOLDINGS LLC

31

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated:  August 25, 2025                   CENTRAL DISTRICT OF CALIFORNIA

_HONORABLE ALICIA G. ROSENBERG_
United States Magistrate Judge

[PROPOSED] CONSENT DECREE

# LAWK-VGP Consent Decree _6.26.2025_Final [SPB signed]

**Final Audit Report**                                               2025-07-03

| | |
|---|---|
| Created: | 2025-07-03 |
| By: | Hunter Blackburn (Hunter.Blackburn@valvolineglobal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA0pitw4vw6iANHq_r27hFRH6CfDT0vFct |

## "LAWK-VGP Consent Decree _6.26.2025_Final [SPB signed]" History

Document created by Hunter Blackburn (Hunter.Blackburn@valvolineglobal.com)
2025-07-03 - 1:04:22 PM GMT

Document emailed to Laura Pentova (lipentova@valvolineglobal.com) for signature
2025-07-03 - 1:04:28 PM GMT

Email viewed by Laura Pentova (lipentova@valvolineglobal.com)
2025-07-03 - 4:31:36 PM GMT

Signer Laura Pentova (lipentova@valvolineglobal.com) entered name at signing as Laura I Pentova
2025-07-03 - 7:23:18 PM GMT

Document e-signed by Laura I Pentova (lipentova@valvolineglobal.com)
Signature Date: 2025-07-03 - 7:23:20 PM GMT - Time Source: server

Agreement completed.
2025-07-03 - 7:23:20 PM GMT

Adobe Acrobat Sign